EL PUEBLO DE PUERTO RICO, peticionario, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE SAN JUAN, HON. HERMINIO MIRANDA, JR., JUEZ, recurrido.

*Número:* O-67-265          *Resuelto:* 16 de diciembre de 1968

J. B. Fernández Badillo, Procurador General, J. F. Rodríguez Rivera, Procurador General Interino, y Lolita Miranda, Procuradora General Auxiliar, abogados del peticionario; Ángel Viera Martínez, abogado del Dr. Arturo González Mena.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

El Fiscal de la Sala de San Juan del Tribunal Superior imputó al Dr. Arturo González Mena tres cargos por infracción a la Ley de Contribuciones sobre Ingresos. En el primero: que en 23 de abril de 1963 rindió al Secretario de Hacienda de Puerto Rico una declaración de ingresos falsa y fraudulenta, en la cual declaró que su ingreso bruto durante el año contributivo terminado el 31 de diciembre de 1962 fue de $184,200.84, a sabiendas de que su verdadero ingreso bruto durante dicho período fue de alrededor de $300,000 ó más; que su ingreso neto tributable fue de $1,638.50 resultando de su planilla una contribución de $206.45, siendo tales hechos falsos y constándole su falsedad, ya que su verdadero ingreso neto para dicho año contributivo fue de $116,516.11 ó más, ascendiendo la contribución a $74,841.12 ó más.

En el segundo cargo imputó al Dr. Arturo González Mena que en 24 de marzo de 1964 rindió al Secretario de Hacienda una declaración de ingresos falsa y fraudulenta para el año terminado el 31 de diciembre de 1963, en la cual declaró que su ingreso bruto durante ese período fue de $205,493.17, siendo su verdadero ingreso bruto de alrededor de $300,000 ó más; declaró un ingreso neto tributable de $1,814.45 resul-

tando de su planilla una contribución de $228.44, hechos éstos falsos ya que el verdadero ingreso neto para dicho período fue de $109,399.32 ó más y la contribución a pagarse de $67,167.96 ó más.

En el tercer cargo le imputó que el 17 de marzo de 1965 rindió al Secretario de Hacienda una declaración de ingresos falsa y fraudulenta para el año contributivo terminado el 31 de diciembre de 1964, en la cual declaró un ingreso bruto de $132,323 a sabiendas de que su verdadero ingreso bruto por ese período fue de $250,000 ó más, y declaró que el ingreso neto tributable era ninguno, ascendiendo la contribución adeudada a la suma de $35,670.26 ó más.

La acusación se radicó el 31 de octubre de 1966. El acusado hizo alegación de inocencia y solicitó juicio por jurado. En 28 de junio de 1967 pidió a la Sala de instancia que ordenara al Secretario de Hacienda que le suministrara copia del Informe o los Informes preparados por los Inspectores del Negociado de Contribuciones sobre Ingresos en cuanto a su caso, ya que el Secretario de Hacienda se había negado a suministrarlos. La Sala de San Juan denegó dicha petición por el fundamento de que tales documentos no estaban bajo la custodia del fiscal.

En reconsideración, invocó el acusado el caso de *Pueblo* v. *Tribunal Superior, Héctor López Cruz, Interventor*, Sentencia de 24 de junio de 1960, y alegó que este Tribunal había sostenido el derecho de un acusado a obtener antes del juicio el protocolo de autopsia del patólogo o de la institución que lo tuviera, y a obtener de la Policía las fotografías que ésta hubiere tomado en relación con los hechos; ([1]) que los

---

([1]) En *Pueblo* v. *Tribunal Superior, Héctor López Cruz, Interventor*, dejamos sin efecto una Orden de la Sala de San Juan del Tribunal Superior fechada 1ro. de abril de 1960 que le requirió al fiscal que mostrara a la defensa el protocolo de autopsia, así como las fotografías tomadas en el sitio del accidente. Dispusimos, no obstante, que ello era sin perjuicio de que a solicitud del acusado, el Tribunal ordenara a la institución o persona que tuviera bajo su custodia dicho protocolo de autopsia

informes preparados por el Negociado de Contribuciones sobre Ingresos estaban en la misma situación que el protocolo de autopsia porque no formaban parte del trabajo del fiscal, no eran declaraciones juradas y no tenían la protección de la Regla 95 de Procedimiento Criminal. Además, que el Director del Negociado de Contribuciones sobre Ingresos le informó que había enviado al Departamento de Justicia un Informe preparado por el Negociado para que se iniciara la correspondiente acción criminal contra el acusado, y que este Informe estaba en poder del fiscal.

A la luz de estas expresiones, el 3 de agosto de 1967 la Sala de instancia dictó orden en que hizo constar el hecho de haber aceptado el fiscal en corte que tenía bajo su custodia, como parte del expediente, el Informe rendido al Secretario de Hacienda por los Inspectores del Negociado de Contribuciones sobre Ingresos, producto de la investigación administrativa de este caso. Dispuso la Sala que por ser dicho Informe uno de los documentos a que se refiere la Regla 95 de Procedimiento Criminal debía suministrarse al acusado copia de dicho Informe o permitírsele examinarlo o fotografiarlo. Para revisar la corrección de la anterior orden expedimos *certiorari*.

La cuestión básica a considerar gira en torno a la naturaleza del documento constitutivo del Informe aquí envuelto, a la luz de la Regla 95 de Procedimiento Criminal de 1963.

La Regla 95 de las de Procedimiento Criminal dispone:

"Previa moción del acusado sometida en cualquier momento después de haberse presentado la acusación, el tribunal podrá ordenar al fiscal que produzca para ser inspeccionados, copiados o fotografiados por el acusado o su abogado, determinados objetos, libros, *documentos y papeles* que no fueren declaraciones juradas, con excepción de la declaración del propio acusado,

---

que librara copia del mismo al acusado. La orden recurrida quedó confirmada en lo referente al suministro por el fiscal de las fotografías tomadas en el sitio del accidente. Para la fecha, no regía la Regla 95 de las de Procedimiento Criminal.

que El Pueblo hubiese obtenido del acusado *o de otras personas* mediante orden judicial *o de otro modo,* y que pudieren ser necesarios para la preparación de la defensa del acusado, independientemente de que El Pueblo se propusiere ofrecerlos en evidencia o de que los mismos fueren admisibles en evidencia. La orden especificará el tiempo, lugar y manera de hacer la inspección, de sacar las copias o tomar las fotografías y podrá prescribir los términos y condiciones que el tribunal estimare justos." (Énfasis suplido.)

La Regla transcrita procede virtualmente de la Núm. 16 de las Reglas Federales de Procedimiento Criminal adoptadas el 21 de marzo de 1946. ([2])

Comparando ambas Reglas, antes de ser la Núm. 16 enmendada a partir del 1ro. de julio de 1966, se notan dos diferencias aquí pertinentes: La Regla federal no excluía del descubrimiento bajo los términos de "papeles" y "documentos", las declaraciones juradas que tuviera el fiscal en su posesión. Por otra parte, la Regla 16 permitía el descubrimiento de aquellos objetos, libros, documentos y papeles obtenidos del propio acusado, y los obtenidos de otras personas, sólo en virtud de orden judicial o proceso.

Al ser adoptada en 1963, la Regla 95 se apartó de la Regla 16 federal, antes de ser ésta ampliamente enmendada a partir de julio 1, 1966, 18 U.S.C.A., *Rules,* 1967 Cum. Ann. Pocket Part, pág. 175. Se orientó la Regla 95 en la norma de la Ley Pública 85–269 de 2 de septiembre de 1957—71 Stat. 595—familiarmente conocida como la Ley Jencks

---

([2]) 18 U.S.C.A.—Rules, pág. 353:

"Upon motion of a defendant at any time after the filing of the indictment or information, the court may order the attorney for the government to permit the defendant to inspect, and copy or photograph designated books, *papers, documents* or tangible objects, obtained from or belonging to the defendant or obtained *from others by seizure or by process,* upon a showing that the items sought may be material to the preparation of his defense and that the request is reasonable. The order shall specify the time, place and *manner of making the inspection and of taking the copies or photographs* and may prescribe such terms and conditions as are just." (Énfasis suplido.)

por ser legislación provocada por *Jencks* v. *United States*, 353 U.S. 657, decidido en 3 de junio de 1957. La Regla 95 excluyó del descubrimiento, bajo el concepto de "documentos" y "papeles", las declaraciones juradas que, en beneficio del acusado, no estaban excluidas en la Regla 16 federal al ser ésta adoptada.

Al excluir las declaraciones juradas, la Regla 95 hizo excepción de la declaración del propio acusado, y ahí siguió nuestra norma sentada en *Pueblo* v. *Tribunal Superior*, 80 D.P.R. 702, resuelto en 1958, en que por voz del Juez Asociado Sr. Hernández Matos este Tribunal había ya reconocido ese derecho del procesado. (³)

De otra parte, la Regla 95 permitió el descubrimiento, distinto a la 16 federal, de materia que hubiere llegado a manos de El Pueblo obtenida de otras personas mediante orden judicial *o de otro modo*. La Regla 16 se limitaba a la diligencia judicial.

---

(³) Históricamente, la Ley de Enjuiciamiento Criminal para Cuba y Puerto Rico que comenzó a regir el 1ro. de enero de 1889, disponía que las diligencias del sumario practicadas por el juez de instrucción eran secretas, con varias excepciones en el curso de dichas diligencias en que el presunto procesado tenía derecho a intervenir por sí o por representación de abogado particular o nombrado de oficio a petición suya. Arts. 299, 301, 333, 336, 350.

Pero concluido el sumario por el juez instructor, de no sobreseerse la causa, el procesado tenía derecho a examinar la correspondencia, libros, papeles y demás piezas de convicción del sumario, antes de efectuarse el juicio oral.

De la expresión contenida en el Art. 11 del Código de Enjuiciamiento Criminal de 1902 al efecto de que "el examen de testigos por el promotor fiscal según lo dispuesto en el artículo 3, se hará privadamente", hemos sostenido con gran firmeza hasta el presente el secreto del expediente fiscal, excepto ciertas recientes incursiones en dicho expediente permitidas por la decisión de *Jencks,* que adoptamos como norma nuestra, y por la Regla 95, en adición a la revelación del secreto que hicimos en *Pueblo* v. *Tribunal Superior,* antes citado.

La tendencia al presente, sin embargo, es hacia un aflojamiento de la férrea regla del secreto. Pero ahora, debemos regirnos por la ley positiva que gobierna nuestra función, y lo otro queda para la acción de los organismos revisadores de la legislación.

A partir de la decisión de *Jencks*, y la siguiente legislación que resultó de ella, se han entrelazado los conceptos del descubrimiento bajo la Regla 16 y bajo la norma de *Jencks*. De hecho, la Ley Pública 85–269 de 1957 indirectamente tuvo el efecto de restringir la Regla 16 federal, que no excluía las declaraciones juradas, si bien no fue legislación enmendando dicha Regla.

Dispone la referida Ley, que vino a ser la Sec. 3500 adicionada al Capítulo 223 del Título 18, que en una acusación traída por los Estados Unidos ninguna declaración o *informe* en posesión de los Estados Unidos hechos por un testigo del Gobierno o probable testigo del Gobierno (que no sea el acusado) a un agente del Gobierno, será objeto de citación, descubrimiento o inspección *hasta que dicho testigo haya declarado en interrogatorio directo en el curso del juicio del caso*. La Ley establece entonces un mecanismo relativo a la manera de manejar en corte dicha declaración o informe a la luz de otros factores envueltos.

La porción de la Sec. 3500—Ley 85–269—que prohibe el descubrimiento expresado en el párrafo anterior se hizo formar parte de la propia Regla 16 a partir de julio 1, 1966, la que ahora prohibe el descubrimiento o inspección de *informes, memoranda, o cualquier otro documento interno del Gobierno* hecho por *agentes* del mismo, relacionados con *la investigación del caso*, a menos que sea conforme a la Sec. 3500, esto es, hasta que el testigo del gobierno haya declarado en examen directo en corte.

El Informe que el acusado interesa inspeccionar y que se le suministre no es, según los autos, una declaración jurada de un testigo. De serlo, estaría excluido por la Regla 95. Tampoco es una declaración jurada del acusado. No obstante, la Regla 95 no se circunscribe a declaraciones juradas, sino que habla también de "documentos" y "papeles". El punto a considerar es si el Informe constituye tal documento o

papel, dentro del significado de la Regla, y a la luz de otras consideraciones a ser tomadas en cuenta.

Por vía de ilustración comentaremos el caso de *Palermo v. United States*, 360 U.S. 343. Se resolvió en junio 22 de 1959, con posterioridad a la Ley 85–269 de 1957. Éste fue un caso de evasión a sabiendas del pago de la contribución sobre ingresos, en que hubo una convicción. Se acusó al contribuyente de no incluir en su planilla para los años 1951 y 1952 cantidades sustanciales de dividendos. Entre la prueba del Gobierno en el juicio estaba un memorando presumiblemente coetáneo y de puño y letra del acusado acreditativo del recibo de dividendos en cantidad sustancialmente mayor.

La defensa del acusado era que él había puesto este memorando en manos de los contadores que prepararon sus planillas al hacerse éstas. El Gobierno sostenía que él entregó el memorando a los contadores después de iniciada la investigación. El punto levantaba un hecho esencial de defensa, en cuanto a si hubo o no una evasión a sabiendas y voluntariamente.

El contador declaró en el proceso que él había recibido el memorando según decía el Gobierno, después de la investigación. Antes del juicio él había declarado ante los agentes y suscrito una declaración jurada reafirmando la fecha de la entrega. En esa ocasión se hizo un *"memorando"* de la conferencia entre el contador y los agentes, cuando el contador prestó su declaración.

Después del testimonio directo en corte del testigo, el acusado solicitó que se produjera el *"memorando"* de la conferencia o la parte del mismo que resumiera lo que había dicho el contador. Esta petición fue denegada. El Tribunal Supremo no halló error en la denegatoria y confirmó la convicción.

En el análisis que hace del problema, expresa el Juez Frankfurter que una de las razones más importantes para la adopción del estatuto de 1957 (Sec. 3500) fue el grave

temor de que bajo la decisión de *Jencks* se obligara a divulgar los sumarios o síntesis hechos por los agentes de las entrevistas con testigos, independientemente del carácter de dichos sumarios. Dice que se temió no sólo que la divulgación de *memorandos* conteniendo las *interpretaciones e impresiones* podían revelar los métodos internos de trabajo en el proceso investigador, en perjuicio del interés nacional, sino que sería muy injusto el permitir a la defensa impugnar un testigo con una declaración que no era la *suya propia*, sino el resultado de las selecciones, interpretaciones e interpolaciones hechas por el investigador. (360 U.S., a la pág. 350) El Tribunal se refiere entonces al significado del término "declaración" (*statement*) bajo el estatuto aludido, y concluye que el "memorando" solicitado no era tal documento, como uno de los que la ley permitía ser suministrados al acusado una vez que el testigo prestara en corte su testimonio directo. (⁴)

La decisión de *Palermo*, como se ve, no envuelve el descubrimiento previo al juicio de la Regla 95, cual es el caso de autos. Sin embargo, la filosofía de derecho público o de orden público y la razón por la cual un "memorando" o "trabajo" o "informe" de un agente del Gobierno hecho y circulado dentro de la esfera departamental se excluye de la norma de ley que permite la inspección es la misma filosofía de orden público y la misma razón, ya se trate de descubrimiento previo al juicio, o ya en el curso del juicio para fines

---

(⁴) Dispone la Sec. 3500, Título 18 . . . que (e) el término declaración (*statement*) en relación con un testigo llamado a declarar por los Estados Unidos, significa:

(1) una declaración escrita hecha por el testigo y firmada o de otro modo adoptada o aprobada por él; o

(2) una grabación estenográfica, mecánica, eléctrica o de otro modo o una transcripción de la misma, que es sustancialmente una grabación literal de una declaración verbal hecha por el testigo a un agente del gobierno y grabada coetáneamente con la expresión de dicha declaración verbal. Véase *Palermo* v. *United States*, supra; Cf: *Ogden* v. *United States* (9th Cir. 1962) 303 F.2d 724; *United States* v. *Rothman*, 179 F.Supp. 935; *Ogden* v. *United States*, 323 F.2d 818, cert. den. 376 U.S. 973; *Walsh* v. *United States* (1st Cir. 1967) 371 F.2d 436.

de impugnación. Solo que cuando se trata de esto último, la corte podría permitir aquello que fuera materia de evidencia en el informe que sirviera para impugnar, bajo la debida supervisión del juez.

La parte demandante aquí es El Pueblo de Puerto Rico. Si el Informe del Inspector o Inspectores del Negociado de Contribuciones sobre Ingresos constituye o no un papel o documento obtenido por *"El Pueblo"* de *"otra persona"*, según reza la Regla 95, *quaere*. No nos detendremos a analizar más a fondo si el Negociado de Contribuciones sobre Ingresos es o no persona distinta de El Pueblo porque el caso se resuelve por consideraciones más sustanciales.

Por separado del régimen de las Reglas, dispone el Art. 48 de la Ley de Evidencia que un funcionario público tiene el deber de facilitar, al requerírsele, copia certificada de un documento público que tenga bajo su custodia. El Art. 47 que le precede concede a todo ciudadano el derecho a inspeccionar y sacar copia de cualquier documento público, salvo lo dispuesto en contrario por ley. Pero el Art. 45 establece que son documentos públicos los que se determinan en el Art. 1184 del Código Civil (Art. 1170 ed. 1930), y todos los demás escritos—Art. 46—son documentos privados.(5)

Incuestionablemente, a la luz del Art. 1170 del Código Civil, ed. 1930, un informe, memorando o escrito preparado por un empleado o funcionario en el ejercicio de su cargo o empleo para su superior o para fines internos de las decisiones y actuaciones departamentales no son documentos públicos que, conforme al Art. 47 de la Ley de Evidencia, todo ciudadano tiene derecho a inspeccionar. Así lo ha interpre-

---

(5) Art. 1170 Código Civil:

"Son documentos públicos los autorizados por un notario o empleado público competente, con las solemnidades requeridas por la ley."

El Art. 49 de la Ley de Evidencia divide los documentos públicos en 4 clases: 1.—Leyes; 2.—Protocolos judiciales; 3.—Otros documentos oficiales; 4.—Archivos públicos de documentos públicos o privados, llevados en Puerto Rico.

tado también el Secretario de Justicia en su Opinión de 8 de enero de 1964, *Opiniones del Secretario de Justicia,* Vol. XXXV, pág. 18. Véanse Opiniones anteriores de 29 de abril de 1957—Vol. XXVIII; de 5 de enero de 1942 y la de 26 de julio de 1946.

En un aspecto distinto al que nos ocupa, pero que indudablemente ayuda a fijar la posición especial de documentos preparados y circulados en el curso del cargo o empleo por un funcionario o empleado para fines internos de la agencia o departamento gubernamental se pueden mencionar, igualmente por vía de ilustración, decisiones tales como *Barr* v. *Matteo,* 360 U.S. 564; *Howard* v. *Lyons,* 360 U.S. 593; *Denman* v. *White* (1st Cir. 1963) 316 F.2d 524; *Pagano* v. *Martin,* 275 F.Supp. 498 y casos en ellos citados.

En estos casos se consideró que gozaban de un absoluto privilegio, con total inmunidad para su autor contra reclamaciones por libelo o difamación, documentos surgidos en el curso del desempeño del cargo o empleo y tramitados por los canales oficiales para fines oficiales; a pesar del hecho de que en algunos de esos casos el funcionario hizo alguna divulgación fuera del cauce departamental. Como se dice en *Matteo,* el reconocimiento del privilegio no es un galardón al funcionario sino la expresión de una política dirigida a asegurar un funcionamiento efectivo del gobierno. (360 U.S. a la pág. 572)

El Informe del Inspector o Inspectores del Negociado de Contribuciones sobre Ingresos aquí envuelto, preparado en el curso de sus cargos y sometido a su Superior el Secretario de Hacienda para las determinaciones de éste, probablemente puede tener materia de evidencia propia para desfilar en el juicio. Pero incuestionablemente contiene otras materias que no son de evidencia, tales como las interpretaciones de esos funcionarios de determinados hechos, sus conclusiones subjetivas de tales hechos, así como sus conclusiones a tenor de la ley contributiva que administran, y en lo que a la acción

criminal respecta, puede contener también el método de trabajo o el enfoque o la estrategia de los funcionarios de El Pueblo para sostener la acusación.

En el caso de autos lo dicho cobra mayor fuerza por cuanto no se trata de un caso penal corriente, sino uno que envuelve la violación de una ley sumamente técnica y especializada.

■ Por razones de orden público; porque ello afectaría el efectivo funcionamiento del gobierno e impediría que los funcionarios actuaran con entera libertad y entereza, sin temor o inhibición alguna en la preparación de informes, memorandos u otras expresiones o comunicaciones en el curso de sus cargos, para fines departamentales, debemos concluir que el Informe que aquí se interesa, *como tal*, no está sujeto a inspección bajo la Regla 95 como un "documento" o "papel" obtenido por El Pueblo, de otra persona.

■ La anterior conclusión no afecta en modo alguno el derecho del acusado a obtener, por vía de una amplia especificación de particulares (ver Reglas 39 y 64 (d)), toda la información *de hecho* necesaria para la preparación de su defensa, y específicamente: la fuente de cada partida de ingreso bruto que la acusación le imputa en exceso del informado en la planilla, así como cada partida del ingreso bruto que El Pueblo rechazó como deducción admisible y que produjera el ingreso neto mayor imputado en la acusación, y cualquier otra información *de hecho* relacionada con lo anterior. Tampoco esta decisión anticipa criterio del Tribunal en lo que respecta a la esfera civil.

No obstante la referencia por vía de ilustración que hicimos del caso de *Palermo*, en este momento no expresamos criterio en cuanto a la acción procedente caso de que en el curso del juicio declaren los Inspectores aludidos, sobre cualquier materia de evidencia que pueda haber en el Informe y para fines de impugnación. De suscitarse la cuestión, en-

tonces el juez sabrá interponer aquel grado de supervisión necesario sobre la inspección que proteja adecuadamente los derechos de todos los intereses envueltos.

*Sin perjuicio del derecho de información que antes se le reconoce al acusado, se anula la orden de la Sala de San Juan del Tribunal Superior de 3 de agosto de 1967, objeto del recurso.*