# 2004 DTA 79

RECEIVED

AUG 1 0 2004

SERIALS DEPARTMENT
HARVARD LAW SCHOOL LIBRARY

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**REGION JUDICIAL DE SAN JUAN**
**PANEL II**

CARLOS R. GARCIA CRUZ, POR SI Y EN REPRESENTACION DE LA
JUNTA DE DIRECTORES DEL CONDOMINIO FIRST FEDERAL SAVINGS
Recurrente

v.

DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR
Recurrida

Núm. KLRA-04-00012

San Juan, Puerto Rico, a 12 de marzo de 2004

Panel integrado por su Presidente, el Juez Brau Ramírez,
la Juez Pabón Charneco y el Juez Rivera Martínez

Pabón Charneco, Jueza Ponente

## TEXTO COMPLETO DE LA RESOLUCION

El recurrente, Carlos R. García Cruz, por sí y en representación de la Junta de Directores del Condominio First Federal Savings, acude ante nos solicitando la revisión de una determinación emitida por el Departamento de Asuntos del Consumidor, en adelante, D.A.C.O. Mediante dicho dictamen, el D.A.C.O. denegó a la parte recurrente la revisión de unos documentos.

Por los fundamentos que expondremos a continuación, y acogido el presente recurso como un *mandamus*, se revoca la decisión recurrida.

### I

Conforme surge del recurso ante nuestra consideración, el 1 de octubre de 2003, American Parking System, Inc., operador del estacionamiento público ubicado en el Edificio First Bank, aumentó la tarifa a los usuarios mensuales en un 42.85%. ■ Los usuarios mensuales del estacionamiento son, en su mayoría, propietarios de oficinas en el Condominio.

Ante el alza efectuada, la cual se alega no fue notificada durante su proceso administrativo, la parte recurrente le solicitó al D.A.C.O. revisar la evidencia sometida ante la agencia por American Parking System, Inc. a fin de sostener su petición de revisión de tarifa. El D.A.C.O. no contestó la solicitud.

Así las cosas, la parte recurrente presentó nueva solicitud el 12 de noviembre de 2003. El 10 de diciembre de 2003, la agencia denegó la solicitud. Señaló el D.A.C.O., en lo pertinente:

"...

*Para sustentar su petición, usted se refiere al Artículo VIII, inciso C del Reglamento en Areas de Estacionamiento Público, la cual establece, en síntesis, que las áreas de estacionamiento que soliciten revisión*

*de tarifas, deben probar en forma fehaciente sus alegaciones para la revisión de la tarifa vigente.*

*El Reglamento antes citado tiene el propósito de reglamentar, entre otras cosas, el proceso de solicitud de licencias para operación de áreas de estacionamientos, el proceso de renovación de dicha licencia y de revisión de las tarifas previamente determinadas por el Secretario, basado en los argumentos, alegaciones y récords del operador del estacionamiento.*

*Tanto el Reglamento antes citado como la Ley para Regula[r] el Negocio de Areas para el Estacionamiento Público de Vehículos de Motor, Ley Núm. 120 de 7 de junio de 1973, le confieren al Departamento plenas facultades para reglamentar la operación de estos negocios. Entre las facultades concedidas es la de, previo los estudios e investigaciones económicas necesarias, fijar las tarifas a ser cobradas en dichas áreas de estacionamientos, así como el revisar las mismas a requerimiento de éstos.*

*En el presente caso, la American Parking Inc. solicitó la revisión de la tarifa vigente de las facilidades de estacionamiento operadas en el Edificio First Bank, antes aludido. Como parte del proceso de revisión, se le requirió al Operador una serie de documentos inherentes o demostrativos de sus operaciones, los cuales son documentos que no están, como regla general, accesibles al público.*

*Nuestra institución tiene la responsabilidad de recopilar información de varios componentes de diferentes mercados y ello se hace a base de la confidencialidad de la información de negocios sometida. De ello no ser así, se vería mermada nuestra posibilidad de hacer acopio de información de varios sectores comerciales.*

*En este caso particular, la información pertenece a la empresa y ella ha manifestado su interés de que la misma se mantenga de carácter privada por constituir información sobre sus operaciones de negocio.*

*Por lo antes expresado, no procede su solicitud de revisión de documentos sometidos por American Parking, Inc. con relación a la revisión de tarifas del estacionamiento operados por éstos en las facilidades del Edificio First Bank antes aludido."*

Véase Anejo I del Apéndice.

Inconforme con dicha decisión, acude en revisión ante este Tribunal. Contando con el beneficio de la posición del D.A.C.O., procedemos a resolver.

## II

En su escrito, la parte recurrente alega que incidió el D.A.C.O. al determinar *"[E]n este caso particular, la información pertenece a la empresa y ella ha manifestado su interés de que la misma se mantenga de carácter privada por constituir información sobre sus operaciones de negocio.";* y al denegar la solicitud de revisión de los documentos sometidos por American Parking System, Inc. en relación con la petición de revisión de las tarifas del estacionamiento público, operado por éstos en las facilidades del Edificio First Bank, por considerar que los mismos son de naturaleza confidencial y no están, como regla general, accesibles al público.

## III

El Tribunal Supremo ha expresado que en una sociedad que se gobierna a sí misma, resulta imperativo reconocer al ciudadano común *"el derecho legal a examinar e investigar cómo se conducen sus asuntos, sujetos sólo a aquellas limitaciones que impone la más urgente necesidad pública...".* Ortiz v. Dir. Adm. de los Tribunales, 152 D.P.R. ___ (2000), **2000 J.T.S. 158**. Véase *Soto v. Srio. de Justicia*, 112 D.P.R. 477, 485 (1982).

A tales efectos, ha manifestado dicho Foro:

*"En Puerto Rico, hemos reconocido el derecho de acceso a información pública como un corolario necesario al ejercicio de los derechos de libertad de palabra, prensa y asociación explícitamente consagrados en el Art. II, Sec. 4 de la Constitución del Estado Libre Asociado, L.P.R.A., Tomo 1. El propósito primordial de los derechos reconocidos en la Sec. 4 del Art. II es garantizar la libre discusión de los asuntos de gobierno. Ello conlleva intrínsecamente asegurar y facilitar a todos los ciudadanos de nuestro país el derecho a examinar el contenido de los expedientes, informes y documentos que se recopilan en la gestión de gobierno y que constan en las agencias del Estado. La premisa es sencilla: si el Pueblo no está debidamente informado del modo en que se conduce la gestión pública, se verá coartada su libertad de expresar, por medio del voto o de otra forma, su satisfacción o insatisfacción con las personas, reglas y procesos que le gobiernan. "*

Por el estrecho vínculo que existe con los derechos a libertad de expresión, asociación y a pedir al gobierno reparación de agravios, **el derecho de acceso a información pública es uno fundamental**. Ello, sin embargo, no significa que el derecho es absoluto e ilimitado. *López Vives v. Policía de P.R.*, 118 D.P.R. 219 (1987). Ahora bien, la clasificación como derecho fundamental impone un análisis de escrutinio **estricto** judicial al evaluar la validez de las barreras levantadas por el Estado como fundamento para denegar un pedido de información.

El derecho de acceso a determinada información en poder del Estado depende, en primer lugar, de si la información solicitada es en realidad información **pública**. *Pueblo v. Tribunal*, 96 D.P.R. 746, 755 (1986). Son diversas las definiciones que nuestro ordenamiento jurídico ha dado al término *"información pública"*. Según el Art. 1170 del Código Civil: *"[s]on documentos públicos los autorizados por un notario o empleado público competente, con las solemnidades requeridas por la ley."* 31 L.P.R.A. sec. 3271.

También son públicos aquellos documentos descritos en el Art. 1(b) de la Ley para la Administración de Documentos Públicos de Puerto Rico, 3 L.P.R.A. sec. 1001(b), según enmendada. Allí se define como documento público:

*"Todo documento que se origine, conserve, o reciba en cualquier dependencia del Estado Libre Asociado de Puerto Rico de acuerdo con la ley o en relación con el manejo de asuntos públicos y que de conformidad con lo dispuesto en la sec. 1002 de este título se haga conservar permanentemente o temporalmente como prueba de las transacciones o por su valor legal.*

*Una vez un documento cae bajo alguna de estas definiciones, el ciudadano común tiene derecho a solicitar acceso a la información y, como veremos, el Estado sólo podrá negar válidamente el acceso a un ciudadano interesado en un número determinado de supuestos. El aún vigente Art. 409 del Código de Enjuiciamiento Civil, 32 LPRA 1781, establece claramente que, en principio, todo ciudadano, **por el sólo hecho de serlo**, tiene el "interés especial" necesario para solicitar examinar documentación pública:*

*Todo ciudadano tiene derecho a inspeccionar y sacar copia de cualquier documento público de Puerto Rico, salvo lo expresamente dispuesto en contrario por la ley.*

*En la medida en que todo ciudadano tiene el derecho a inspeccionar cualquier documento público, el acto de denegar el acceso, por sí mismo, causa al solicitante un daño claro, palpable y real. Cuando el Estado injustificadamente impide al ciudadano inspeccionar un récord público, lesiona su derecho fundamental a estar informado. Derecho a su vez inherente y necesario para el ejercicio efectivo de los derechos constitucionales de libertad de expresión, asociación y de pedir al gobierno reparación de agravios. Resulta claro, entonces, que el ciudadano que no logra acceso a un documento público, por razón de un reclamo de confidencialidad del Estado, tiene, cuando menos, legitimación activa para cuestionar la validez del obstáculo que se interpone al ejercicio de sus derechos constitucionales. En consecuencia, erró el Tribunal de Circuito al negarle legitimación activa para incoar el presente pleito. "* (Enfasis en el original)

*Ortiz v. Dir. Adm. de los Tribunales, supra.*

Como regla general, el Estado sólo puede reclamar válidamente la secretividad de información pública en un número limitado de supuestos, a saber, cuando: (1) una ley (o un reglamento) así específicamente lo declara; (2) la comunicación está protegida por alguno de los privilegios evidenciarios que pueden invocar los ciudadanos; (3) revelar la información puede lesionar derechos fundamentales de terceros; (4) se trate de la identidad de un confidente, conforme a la Regla 32 de Evidencia, 32 L.P.R.A. Ap. IV; o (5) sea información oficial, conforme a la Regla 31 de Evidencia, *supra. Ortiz v. Dir. Adm. de los Tribunales, supra.* Véanse, *Angueira v. J.L.B.P.I.*, 150 D.P.R. ___ (2000), **2000 J.T.S. 1**; modificada en *Angueira v. J.L.B.P., II*, 151 D.P.R. ___ (2000), **2000 J.T.S. 109**; *López Vives v. Policía de P.R., supra; Santiago v. Bobb*, 117 D.P.R. 153, 159 (1986).

A tales efectos, el examen judicial al cual deberá someterse cualquier reclamo de confidencialidad de documentos e información pública dependerá de la excepción que invoque el Estado como fundamento *vis à vis* el pedido de información. Véase *Angueira v. J.L.B.P., I, supra*; modificada en *Angueira v. J.L.B.P., II, supra.*

Cuando el gobierno invoca una ley o reglamento como fundamento para negar al ciudadano el acceso a información pública, la regulación debe satisfacer un escrutinio judicial estricto. *Ortiz v. Dir. Adm. de los Tribunales, supra.* En concreto, deben cumplirse los siguientes requisitos: (a) caer dentro del poder constitucional del gobierno; (b) propulsar un interés gubernamental apremiante; (c) que tal interés no esté directamente relacionado con la supresión de la libertad de expresión; y (d) que la restricción a la libertad de expresión no sea mayor de lo necesario para propulsar dicho interés. *Id.; Angueira v. J.L.B.P., I, supra;* modificada en *Angueira v. J.L.B.P., II, supra.*

## IV

En el caso de autos, la parte recurrente nos solicita ordenemos al D.A.C.O. que suministre la información solicitada.

Se trata, en esencia, de una solicitud de *mandamus.* La expedición de este tipo de recurso, según se conoce, procede para hacer cumplir un deber ministerial claramente establecido por ley o que resulte del empleo, cargo o función pública. *Noriega v. Hernández Colón*, 135 D.P.R. 406 (1994); *Hernández Agosto v. Romero Barceló*, 112 D.P.R. 407, 418 (1982); 32 L.P.R.A. secs. 3421 y 3422.

En *Dávila v. Superintendente de Elecciones*, 82 D.P.R. 264 (1960), el Tribunal Supremo de Puerto Rico expresó que las siguientes consideraciones deben ser tomadas en cuenta al determinar sobre la expedición de este tipo de recurso:

*"(1) El mandamus es el recurso apropiado cuando el peticionario no dispone de otro remedio legal adecuado para hacer valer su derecho y cuando se trate del incumplimiento de un deber ministerial que se alega ha sido impuesto por ley;*

*(2) La solicitud de mandamus tiene que ir dirigida contra el funcionario principal encargado del cumplimiento del deber, se levantan cuestiones de interés y el problema planteado requiere una solución pronta y definitiva.*

*(3) El peticionario establece que hizo un requerimiento previo al funcionario para que éste realizase el acto cuyo cumplimiento se solicita.*

*(4) El peticionario tiene un interés indiscutible en el derecho que se reclama, distinto al que pueda tener cualquier otro ciudadano."*

A las págs. 274-275.

Según se desprende de las normas anteriores, el *mandamus* no es un remedio de primera aplicación, sino que se trata de un recurso extraordinario que se utiliza como alternativa cuando puede constatarse que otros medios han resultado o habrán de resultar futiles. Véase, 32 L.P.R.A. sec. 3423 *("[e]ste auto no podrá dictarse en los casos en que se encuentre un recurso adecuado y eficaz en el curso ordinario de la ley"); Alvarez de Choudéns v. Tribunal Superior*, 103 D.P.R. 235, 241 (1975).

Hemos evaluado la petición de la parte recurrente a la luz del ordenamiento jurídico prevaleciente y somos de opinión que no existe justificación que impida la revisión de los documentos solicitados. El D.A.C.O. no ha probado que la información solicitada afecte de manera fundamental los derechos de American Parking, Inc. Más bien, y conforme surge de la misiva denegando la información, la agencia descansa en que *"tiene la responsabilidad de recopilar información de varios componentes de diferentes mercados y ello se hace a base de la confidencialidad de la información de negocios sometida. De ello no ser así, se vería mermada nuestra posibilidad de hacer acopio de información de varios sectores comerciales."* Resulta insostenible, a la luz de lo señalado, argumentar que la confidencialidad del expediente protege algún otro interés.

## V

Por los fundamentos arriba esbozados, se expide el auto de *mandamus* y se ordena al D.A.C.O. le suministre a la parte recurrente la información solicitada.

Así lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida I. Oquendo Graulau
Secretaria General

**ESCOLIO 2004 DTA 79**

**1.** El aumento fue de $70.00 a $100.00.