EL PUEBLO, DEMANDANTE Y APELADO, *v.* ITURREGUI ET AL.,
ACUSADO Y APELANTE.

No. 2252.—*Visto:* Abril 15, 1924. *Resuelto:* Mayo 31, 1924.

ADULTERACIÓN DE LECHE—PRECINTOS DE LOS ENVASES DE LECHE.—El hecho de que la leche hubiera sido vendida por la persona que se la compró al ganadero cuando estaba en tránsito desde la ganadería al depósito en donde resultó adulterada, no exime de responsabilidad al vendedor; y el hecho de tener precintos los envases no excluye la posibilidad de que fuera adulterada después de ser recogida de la ganadería.

ID.—ID.—La ignorancia del vendedor en cuanto a la adulteración de la leche no le exonera de responsabilidad.

SENTENCIA de *Charles E. Foote,* J. (San Juan, Primer Distrito), en causa por adulteración de leche, condenando a Iturregui y absolviendo a otro de los acusados. *Confirmada.*

*Campillo & Campillo,* abogados del apelante; *José E. Figueras, Fiscal,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR FRANCO SOTO, emitió la opinión del tribunal.

Se apela de una sentencia que condena al acusado a sufrir cinco días de cárcel por tener y ofrecer en venta leche adulterada.

Se alega como único motivo de error no haberse probado que el acusado hubiera estado en ningún momento en posesión de la leche adulterada.

El acusado vendía leche a Cándido López que era dueño de un puesto para la venta de dicho artículo. El 14 de marzo de 1923, a instancias de López y en momentos de llegar la leche al puesto para ser entregada y antes de ser rotos los precintos, uno de los inspectores de sanidad tomó una muestra que resultó adulterada. No se discute el hecho de la adulteración de la leche. El acusado, alega que la leche era comprada a Julián Molinari, dueño de una vaquería en Carolina. Este la ponía en envases precintados en la carretera y de ahí era recogida por un *truck* por orden del acusado. Al llegar el *truck* a Santurce el acusado desde un cafetín daba las órdenes al *chauffeur* para su entrega a los distintos puestos. Existen otros detalles en la

prueba de que López se había quejado con frecuencia al acusado que la leche venía floja y había resultado adulterada antes de la denuncia. El acusado ofreció llamar la atención a Molinari, dueño de la vaquería, diciendo que había conseguido que los envases vendrían precintados, aunque no con candados porque era una dificultad para venderla durante el camino.

La prueba demuestra, por tanto, que una vez recogida por orden del acusado la leche en el camino, él era el dueño de la misma y quedaba en su posesión material para distribuirla y venderla en la forma que mejor creyera. El hecho de tener precintos los envases no excluye la posibilidad de que fuera adulterada después de recogida, porque de la misma prueba resulta que los precintos son susceptibles de quitar y poner y están de venta en las quincallas.

Y tampoco sería una defensa la falta de conocimiento de la adulteración por el acusado, porque la sección 1ª de la ley núm. 59 de 1910 (Comp. sec. 5787) también castiga el mero hecho de tener u ofrecer en venta leche adulterada o diluída, y en estos casos no es necesario probar que se adulteró o diluyó con la intención de ofrecerla en venta, ni que la persona acusada fué quien la adulteró, ni que sabía que estaba adulterada. *El Pueblo* v. *Gautier,* 20 D.P.R. 328; *El Pueblo* v. *Calderón,* 17 D.P.R. 484; *El Pueblo* v. *Rodríguez,* 23 D.P.R. 839; *El Pueblo* v. *Vázquez,* 26 D.P.R. 14.

Por lo expuesto, *la sentencia debe confirmarse.*